**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Quechan Tribe of the Fort Yuma Indian Reservation,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>United States of America, et. al.,<br><br>　　　　Defendants. | No. CIV 10-02261-PHX-FJM<br><br>**ORDER** |

  The court has before it defendants' Motion to Dismiss First Amended Complaint (doc. 23), plaintiff's response (doc. 27), and defendants' reply (doc. 29).

  This is an action brought by the Quechan Indian Tribe against the United States seeking a declaration that the United States has a duty to operate its medical facilities and practices at a level that meets or exceeds a minimum generally accepted standard of care, and that the United States has breached that duty. Plaintiff also seeks equitable relief requiring defendants to ensure its medical services at the Fort Yuma Indian Reservation do not fall below the minimum standard of care. Defendants move to dismiss plaintiff's First Amended Complaint ("FAC") for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P. and for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), Fed. R. Civ. P.

## I. Background

The Quechan Indian Tribe is federally recognized. Defendants are the United States of America, acting through the Department of Health and Human Services, the Indian Health Service ("IHS"), and the IHS Fort Yuma Service Unit. IHS is an agency of the Department of Health and Human Services whose mission is to provide health care to American Indians and Alaska Natives throughout the United States. Its authority derives from two primary statutes, the Snyder Act, 25 U.S.C. § 13 and the Indian Health Care Improvement Act ("IHCIA"), as amended, 25 U.S.C. § 1601 et. seq. Defendants provide federal health care services and facilities to the Quechan Indian Tribe via the Fort Yuma Service Unit. Plaintiff alleges that the physical facilities at Ft. Yuma are in disrepair and unsafe, that Ft. Yuma lacks basic medical equipment, and that Ft. Yuma affords unsafe and unhealthy medical care as evidenced, for example, by an "exposure event" in which members of the Tribe received wound care and were possibly exposed to blood borne pathogens due to improper sterilization. FAC ¶¶ 58-64.

Plaintiff alleges seven causes of action. The first three assert various breaches of statutory and common law trust duties. The fourth alleges a violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. Plaintiff's fifth claim alleges violations of the Due Process and Equal Protection Clauses of the Constitution. Finally, plaintiff asserts claims for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and a writ of mandamus pursuant to 28 U.S.C. § 1361.

## II. Federal Trust Responsibility Claims

Plaintiff's first three causes of action assert breach of statutory and common law trust duties. Claim one alleges a breach of the duty to provide health care services and facilities in compliance with minimum standards of professional medical care. Claim two asserts a breach of the duty to preserve and maintain trust property. Claim three asserts a breach of defendants' duty as a health care provider. Plaintiff argues that these duties arise under the Snyder Act, the IHCIA, and the federal trust responsibility. Defendants argue that the statutes do not designate specific fiduciary duties, and thus the general trust

1  responsibility is insufficient to state a valid claim for relief.[1]

2  The general trust relationship between the United States and Indian tribes, alone, is
3  insufficient to create legal obligations in the United States. See Marceau v. Blackfeet
4  Hous. Auth., 540 F.3d 916, 921 (9th Cir. 2008). When a tribe sues the government for
5  damages, it "must identify a substantive source of law that establishes specific fiduciary
6  or other duties, and allege that the Government has failed faithfully to perform those
7  duties." United States v. Navajo Nation, 537 U.S. 488, 506, 123 S.Ct. 1079, 1091 (2003).
8  This standard also applies to equitable relief. See Gros Ventre Tribe v. United States, 469
9  F.3d 801, 812 (9th Cir. 2006).  Accordingly, "unless there is a specific duty that has been
10 placed on the government with respect to Indians, the government's general trust
11 obligation is discharged by the government's compliance with general regulations and
12 statutes not specifically aimed at protecting Indian tribes." Id. at 810 (quoting Morongo
13 Band of Mission Indians v. F.A.A., 161 F.3d 569, 574 (9th Cir. 1998)).

14 For example, in Mitchell v. United States, 445 U.S. 535, 100 S.Ct. 1329 (1980)
15 ("Mitchell I"), the Court considered whether the General Allotment Act of 1887
16 ("GAA"), 25 U.S.C. § 331, et. seq., authorized an award of damages for mismanagement
17 of forests located on tribal land.  After examining the GAA's language, history, and
18 purpose, the Court concluded that it "created only a limited trust relationship" and "did
19 not impose any duty upon the Government to manage timber resources." Id. at 542, 100
20 S.Ct. at 1353.  In contrast, in United States v. Mitchell, 463 U.S. 206, 103 S.Ct. 2961
21 (1983) ("Mitchel II") the Court looked at whether other sources of law created legal
22 duties, and concluded that the comprehensive network of timber management statutes and
23 regulations imposed specific fiduciary duties on the government to manage timber. Id. at
24 224, 103 S.Ct. at 2971-72.  The cases turn on whether a statute creates only a "bare trust"

---

[1] Defendants conflate the two grounds on which they seek dismissal.  Because we conclude that each of plaintiff's claims fails to state a claim upon which relief may be granted, we dismiss based upon defendants' Rule 12(b)(6) motion and need not reach the jurisdictional issue.

- 3 -

1    or establishes specific legal duties.  Moreover, the trust responsibility arises when the
2    United States holds tribal property in trust.
3        The Snyder Act authorizes the United States to provide "for the benefit, care, and
4    assistance of the Indians throughout the United States for the relief of distress and
5    conservation of health." 25 U.S.C. § 13.  But it imposes no specific legal duty.  For
6    example, in Virgil v. Andrus, 667 F.2d 931, 934 (10th Cir. 1982), the Tenth Circuit
7    declined to find that the Snyder Act gave rise to a specific fiduciary duty to provide free
8    lunches to all Indian school children.  Moreover, the Ninth Circuit has concluded that the
9    Snyder Act consists of only broad language and does not impose any specific statutory
10   duty.  See McNabb v. Bowen, 829 F.2d 787, 792 (9th Cir. 1987).
11       The Snyder Act consists of extremely broad language and does not refer to a
12   specific standard of care, much less impose one on defendants.  The statute, like the
13   GAA, does not provide that "virtually every stage of the process of delivering health care
14   to the plaintiffs be under the IHS' control."  Allred v. United States, 33 Fed. Cl. 349, 357
15   (Fed. Cl. 1995)(internal citations omitted)(holding that plaintiffs failed to state a breach of
16   trust claim under the Snyder Act or the IHCIA when the government terminated certain
17   health benefits).  The Snyder Act fails to impose an affirmative duty on defendants to
18   provide a specific level of health care or to maintain facilities at a certain level.  Plaintiff's
19   breach of duty claims cannot rely on the Snyder Act.  The provision of services under that
20   Act is a matter of grace, not a legal obligation.
21       We next turn to the IHCIA to determine whether it "unambiguously provides that
22   the United States has undertaken full fiduciary responsibilities" as to the management of
23   Indian health care.  Mitchell I, 445 U.S. at 542, 100 S.Ct. at 1353.  The IHCIA requires
24   defendants to eliminate deficiencies in health status and resources, and to meet the health
25   needs of Indians in an equitable manner.  25 U.S.C. §1621(a); (c)(1).  It also requires
26   competent personal, §1661(c)(2), and facilities that meet accreditation standards,
27   §1631(a)(2).  While these provisions are more exacting than those in the Snyder Act, they
28   still do not impose a duty on defendants to provide a certain level of health care, preserve

1     and maintain tribal property, or be a health care provider.

2     Plaintiff argues that the 2010 amendment to the IHCIA, in which Congress added
3     the word "trust" to the statute confirms a Congressional intent to impose fiduciary duties
4     on defendants. See 26 U.S.C. § 1602 (referring to "trust responsibilities and legal
5     obligations to Indians")(emphasis added). We disagree. In Mitchell I, the United States
6     held the tribal land "in trust" for Indians, but the Court did not find that dispositive. 445
7     U.S. at 542, 199 S.Ct. at 1353. Here, the United States does not even hold the Ft. Yuma
8     facility in trust. It belongs to the United States. It is not held in "trust" for the tribe.

9     Moreover, one of the goals of the IHCIA is to "ensure maximum Indian
10    participation in the direction of health care services." § 1602(3). Because the statute aims
11    in part to foster tribal self-determination, it would be inconsistent to hold that the United
12    States is exclusively responsible for Indian health care. See Navajo Nation, 537 U.S. at
13    494, 123 S.Ct. at 1084 (holding that because the Indian Mining Lease Act encouraged
14    tribal self-determination, the statute did not impose fiduciary duties); see also McNabb,
15    829 F.2d at 792 (finding that while the federal government may have some responsibility
16    for Indian health care, it is not the exclusive provider).

17    Plaintiff next argues that a number of cases have recognized that the IHCIA
18    imposes fiduciary duties. See Navajo Nation v. Dep't of Health and Human Serv., 325
19    F.3d 1133, 1139, n. 6 (9th Cir. 2003)(stating that the IHCIA is notable for "Congress'
20    recognition of the federal responsibility for Indian health); see also McNabb, 829 F.2d at
21    792 ("reviewing the text of the IHCIA and the relevant legislative history, one is struck
22    by Congress' recognition of federal responsibility for Indian health care"); White v.
23    Califano, 437 F. Supp. 543, 548-49, 555 (D.S.D. 1977), aff'd 581 F.2d 697 (1978)
24    (finding that the legislative history of the IHCIA indicated that Congress intended that the
25    government assume a trust responsibility to Indians). We do not disagree that the statutes
26    discuss the voluntary assumption by the United States of the provision of some health
27    care to Indians. Such broad policy language, however, does not create a private right of
28    action or impose any specific duties on defendants. Without specific statutory

1 entitlement, there is no claim.

2 For example, plaintiff points to 25 U.S.C. § 1631 as imposing a duty to provide 3 adequate facilities. That, however, only requires that defendants "ensure, whenever 4 practicable, that such facility meets the standards of the Joint Commission on 5 Accreditation of Health Care Organizations by not later than 1 year after the date on 6 which the construction or renovation of such facility is completed." § 1631(a)(2). This 7 does not impose a duty to preserve and maintain the facilities and buildings at Ft. Yuma. 8 The statute itself even uses the words, "whenever practicable." Plaintiff does not allege 9 that defendants failed to ensure that Ft. Yuma met accreditation standards one year from 10 its construction or renovation.[2]

11 Plaintiff contends that defendants' exclusive control and management of Ft. Yuma 12 implies that defendants assumed fiduciary duties. See United States v. White Mountain, 13 537 U.S. 465, 475, 123 S.Ct. 1126, 1133 (2003); Mitchell II, 436 U.S. at 209, 222, 225, 14 103 S.Ct. at 2964, 2970-72. But Ft. Yuma is not a tribal asset that defendants are holding 15 in trust. See White Mountain, at 537 U.S. at 475, 123 S.Ct. at 1133; Marceau, 540 F.3d at 16 924 ("[b]ecause the government assumed plenary control over the assets held in trust, the 17 government likewise assumed an obligation, as trustee, to preserve those assets") 18 (emphasis added)). Absent a trust asset there is no fiduciary duty to preserve and 19 maintain as plaintiff alleges. The government, of course, would exercise control over its 20 facilities.

21 Plaintiff's claim for "breach of statutory and common law fiduciary duty as health 22 care provider" also fails to state a cause of action. Plaintiff claims that a fiduciary duty 23 between members of the tribe and the United States arises out of the physician-patient 24 relationship. But the operation of a health care facility does not turn defendants into

---

[2] Plaintiff also points to § 1621(a)(1), which authorizes defendants to use appropriated funds for the purpose of "eliminating the deficiencies in health status and health resources of all Indian tribes." This does not require defendants to use appropriated funds to repair deteriorating facilities, such as Ft. Yuma. Rather it speaks in broad permissive terms.

- 6 -

1  fiduciaries.  Only individual physicians and patients have such a relationship.

2  If a tribal member has been damaged as a result of medical malpractice, that
3  member may sue the United States under the Federal Tort Claims Act which expressly
4  waives the government's sovereign immunity for such actions.  But plaintiff's *parens*
5  *patriae* lawsuit asking us to find a specific standard of care established in the Snyder Act
6  and the IHCIA fails to state a valid cause of action for breach of statutory or fiduciary
7  duties.  Plaintiff's first three causes of action are dismissed for failure to state a claim.  As
8  a result, we also dismiss plaintiff's sixth cause of action for a declaratory judgment.

### III.  Administrative Procedure Act

10  Plaintiff's fourth cause of action alleges that defendants' maintenance and operation
11  of Ft. Yuma violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.
12  Plaintiff contends that defendants have a "non-discretionary duty to ensure that health
13  care services [are] affirmatively provided to the Tribe and its members."  FAC ¶ 109.  In
14  addition, plaintiff requests a writ of mandamus, pursuant to 28 U.S.C. § 1361, directing
15  defendants to comply with this duty.  Defendants argue that plaintiff's claims fall outside
16  the scope of judicial review under the APA because the distribution of resources for
17  Indian health care is committed to agency discretion by law and falls under the exception
18  to APA review found in 5 U.S.C. § 701(a)(2).

19  5 U.S.C. § 702 authorizes suit by "a person suffering legal wrong because of
20  agency action, or adversely affected or aggrieved by agency action within the meaning of
21  a relevant statute."  However, "review is not to be had in those rare circumstances where
22  the relevant statute is drawn so that a court would have no meaningful standard against
23  which to judge the agency's exercise of discretion."  Lincoln v. Vigil, 508 U.S. 182, 191,
24  113 S.Ct. 2024, 2030-31 (1993).  One example of an administrative decision committed
25  to agency discretion is the allocation of funds from a lump-sum appropriation.  Id. at 192,
26  113 S.Ct. at 2031.  In Lincoln, the Court held that IHS's decision to discontinue services
27  to handicapped Indian children was committed to agency discretion.  Id. at 184, 113 S.Ct.
28  at 2026.  Since Congress never expressly appropriated funds for the program and the

- 7 -

1  Snyder Act allocated a lump-sum appropriation for all Indian health care, the IHS's
2  decision was unreviewable. Id. at 185-189, 113 S.Ct. at 2027-29.
3        This case is like Lincoln. Congress has not expressly appropriated funds to Ft.
4  Yuma. Rather, funds were made available via a lump-sum appropriation. Plaintiff
5  attempts to distinguish Lincoln on the basis that it concerned an agency decision to re-
6  allocate resources in a manner that provided a different (but still adequate) level of
7  service. But "as long as the agency allocates funds from a lump-sum appropriation to
8  meet permissible statutory objectives, § 701(a)(2) gives courts no leave to intrude."
9  Lincoln, 508 U.S. at 193, 113 S.Ct. at 2032. Here plaintiff is really challenging
10 defendants' lack of funding at Ft. Yuma. It does not allege that defendants are using
11 money appropriated under the Snyder Act for things other than Indian health care.
12 Allocating funds to one program over another involves the same discretionary decision as
13 allocating funds to one health care facility over another. Plaintiff's claim that defendants
14 have a mandatory, non-discretionary duty that may be reviewed under the APA and
15 enforced by a writ of mandamus fails. There is no statutory mandate that defendants
16 provide a certain minimal level of health care to Indians. Congress appropriates what it
17 wants to and commits to agency discretion how to distribute it. The agencies have the
18 skill and training to evaluate health care facilities. As the Court has stated, "[t]he
19 principal purpose of the APA limitations. . . and of the traditional limitations upon
20 mandamus. . . is to protect agencies from undue judicial interference with their lawful
21 discretion, and to avoid judicial entanglement in abstract policy disagreements which
22 courts lack both expertise and information to resolve." Norton v. S. Utah Wilderness
23 Alliance, 542 U.S. 55, 66, 124 S.Ct. 2373, 2381 (2004). Accordingly, plaintiff's claims
24 fall outside the scope of judicial review under the APA. Because defendants do not have
25 a mandatory, nondiscretionary duty to provide a minimal level of health care, plaintiff's
26 request for a writ of mandamus is denied.
27                      **IV.  Constitutional Violations**
28       Plaintiff's fifth cause of action alleges that defendants' administration and operation

of Ft. Yuma endangers tribal members in a way that violates the Due Process and Equal Protection Clauses of the Constitution. We briefly address each claim.

Plaintiff argues that due process violations exist because exposing members to communicable diseases violates protections of life and liberty. Additionally, plaintiff alleges that health care services qualify as an "entitlement" to a constitutionally protected property interest. FAC ¶ 95. Defendants argue that a right to medical services is not a protected property interest. Furthermore, no special relationship exists to impose affirmative duties to provide health care.

Due process generally does not confer an "affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." DeShaney v. Winnebago County Dept. of Soc. Serv., 489 U.S. 189, 196, 109 S.Ct. 998, 1003 (1989). In limited circumstances where a special relationship exists, such as when a person is imprisoned or involuntarily committed, due process does require that the government provide certain services. Id. at 198-99, 109 S.Ct. at 1004-05. No such special relationship exists here. Plaintiff's attempt to analogize cases dealing with prisoner's rights to health care is unpersuasive. The special relationship exception applies only when the government has placed a person in custody. Moreover, even if we consider health care services as an entitlement (which it is not), recipients of government benefits merely have a limited property right to due process before essential public entitlements are terminated. See Allred, 33 Fed. Cl. at 356 (1995)(citing Richardson v. Belcher, 404 U.S. 78, 80-81, 92 S.Ct. 254, 257 (1971)). Health care services at Ft. Yuma have not been terminated. Therefore, plaintiff's procedural due process rights have not been implicated and its due process claim does not "plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, __ U.S. __, __ 129 S.Ct. 1937, 1950 (2009).

Plaintiff's equal protection claim rests on allegations that defendants lack a rational basis to provide "health care services that are a level far below those provided to other similarly situated Indians in the United States." FAC ¶¶ 99, 102. Plaintiff relies

- 9 -

1  primarily on <u>Rincon Bank of Mission Indians v. Califano</u>, 464 F. Supp. 934, 939 (N.D.
2  Ca. 1970), where the court held that IHS's system of allocating health care funds violated
3  the plaintiffs' equal protection rights.  Defendants, on the other hand, assert that allocation
4  of scarce funds among different facilities is within their discretion and not unreasonable.
5  We agree with defendants and find plaintiff's argument unpersuasive.  The government
6  has broad discretion to allocate funds for discretionary programs without violating equal
7  protection rights.  <u>See</u> <u>Dandridge v. Williams</u>, 397 U.S. 471, 485, 90 S.Ct 1153, 1161
8  (1970).  That is exactly what defendants have done here.  Plaintiff's equal protection
9  claim, thus, also fails.

## V.  Conclusion

At its core, plaintiff's complaint does not raise legal issues, but policy issues as to the proper allocation of resources for Indian health care.  The Tribe is just one of many interest groups throughout the country competing for scarce resources.  The Tribe's concerns are best addressed through the political process.  Its members' concerns are best addressed through tort claims.

Accordingly, it is **ORDERED GRANTING** defendants' motion to dismiss for failure to state a claim upon which relief may be granted (doc. 23).  It is **ORDERED DISMISSING** this action with prejudice.

DATED this 31st day of March, 2011.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge